**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**SCRANTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE 1, in his own capacity and as parent of child DOE 1, JOHN DOE 2, in his own capacity and as parent of child DOE 2, JANE DOE 1, in her own capacity and as parent of child DOE 3, JANE DOE 2, in her own capacity and as parent of child DOE 4 and JANE DOE 3, in her own capacity and as parent of child DOE 5 | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |
| Plaintiffs | ) ) ) | |
| v. | ) ) | |
| DELAWARE VALLEY SCHOOL DISTRICT, JACK FISHER, JESSICA DECKER, DAWN BUKAJ, BRIAN CARSO, CORY HOMER, PAM LUTFY , FELICIA SHEEHAN, and ROSEMARY WALSH, all individually elected officials sued in their individual capacity and in their official capacity as members of the DELAWARE VALLEY SCHOOL DISTRICT BOARD OF DIRECTORS, a Pennsylvania elected legislative body | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT, AND CONSTITUTIONALLY PROTECTED DUE PROCESS RIGHTS UNDER 42U.S.C. § 1983**

---

Plaintiffs, are all school-age children, some of whom have disabilities that render them medically vulnerable to COVID-19 and others who are under age 12 and are ineligible to be vaccinated, by and through their parents, bring this action for declaratory and injunctive relief on

behalf of themselves and similarly situated children with disabilities who are at severe risk of illness and injury due to their disabilities and allege as follows:

## INTRODUCTION

1.      This case involves students with certain disabilities[1] who, by reason of these disabilities, are more medically vulnerable to severe infection and/or death from COVID-19. For these students to enjoy safe passage into their existing school buildings, classrooms, and extracurricular activities, they require the reasonable modification of universal masking untethered to a purely voluntary parental opt-out.

2.      The case also involves students who are children under the age of twelve and are unable to get vaccinated, who do not want to be exposed to the increased risk of possible infection from COVID-19 caused by the School District's purely voluntary parental opt-out policy from universal masking permitting students, (and employees), to attend school without wearing masks.

3.      This case also involves students who are children above the age of twelve who may have normal health, and do not want to be exposed to the increased risk of possible infection from COVID-19 caused by the School District's purely voluntary parental opt-out policy from universal masking permitting students, (and employees), to attend school without wearing masks.

4.      On January 29, 2021, the Center for Disease Control ("CDC") entered an Order requiring universal masking on public transportation, including school buses, in order to limit the risk of exposure to infection from COVID-19.[2]

---

[1] The disabilities may include one or more of the following: asthma, ADHD, immunocompromised children with medical complexity, genetic, neurologic, metabolic conditions, or with congenital heart disease, obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression.

[2] See Exhibit 1, the January 29, 2021 Order from the CDC.

5.      On August 31, 2021, due to the increase in the rate of infection from COVID-19, Delta Variant, and because many school districts were permitting parents the option to have their children not wear masks while in school, (a/k/a optional masking), the Acting Secretary of the Pennsylvania Department of Health Ordered universal masking to be required for all school students in Pennsylvania effective September 7, 2021.[3]

6.      On September 10, 2021, the Pennsylvania Department of Education sent a Directive to all school districts in the Commonwealth, reinforcing with the school districts that parents do not have an option to sign a waiver form to except their children from the Department of Health Order, unless the parental waiver form is supported by medical documentation which provides verifiable medical proof that the student requires an accommodation from a health risk to the student caused by mask wearing.[4]

7.      On September 28, 2021, the School Board, having full knowledge of the CDC Order, the PADOH Order, and the PDE Directive, all requiring universal masking, voted in direct defiance thereof by a 5-1 majority to permit parents to sign a waiver form to except their children from the PADOH Order WITHOUT the provision of any supporting medical documentation.

8.      The School Board's vote, permits a voluntary opt-out of masking for any child based purely upon parental choice. Such an opt-out—exercised by large numbers of students—is so gaping that it has nullified the rights of students with disabilities, students under twelve years of age, and all other students and employees, who require masking of others in order to enjoy safe, fundamental, non-discriminatory access to their public institutions. Accordingly, court action is necessary to

---

[3] See Exhibit 2, the August 31, 2021 Order of the PADOH.

[4] See Exhibit 3, the September 10, 2021 Directive from the PDE.

institute a mask mandate *without* a purely voluntary opt-out. This will eliminate the barrier to safe access created by the School Board's vote, by modifying rules, policies and practices.

9.      In Pennsylvania school attendance is mandatory and, in return, Pennsylvania Constitutionally guarantees a free education. Since attendance is mandatory, parents are faced with the dilemma of having to place their children in an environment at school with an increased risk of infection from COVID-19 from students not wearing masks, or facing possible fines and punishment for keeping their child at home, or attempting to home-school which may be an impossible burden on the parent, or paying money to send their child to a private school which the parent may be financially unable to do.

10.      With the surge of the Delta variant, the necessity for such universal masking without a purely voluntary opt-out is greater now than it has ever been. Despite the surge of pediatric cases of COVID-19, Defendants have failed to afford the reasonable accommodation of implementing a universal masking policy that does not contain a voluntary opt-out.

11.      Defendants' actions have pitted children against children, while placing the health and safety of medically vulnerable children with disabilities in danger, as well as children under the age of twelve and the rest of the children and employees while in school and riding on school buses. Defendants policy violates the federal rights of those children under: (1) the Americans with Disabilities Act (ADA); (2) Section 504 of the Rehabilitation Act; (3) the CDC's January 29, 2021 Order; (4) the August 31, 2021 Order PADOH; (5) the September 10, 2021 Directive from the PDE; (6) the United States Constitution; (7) the Pennsylvania Constitution; (8) the Civil Rights of Plaintiffs under 42 USCA §1983; and (9) the Equal Protection Clause.

12.      Plaintiffs are asking this Court to enjoin and restrain Defendants from taking any

other action to enforce such policy that is not in compliance with applicable law, and to restore the status quo of universal masking and requiring parents who want an exception for their children from universal masking to submit verifiable medical documentation of any medical, or mental harm, or disability to their children caused by wearing a mask while attending school.

## JURISDICTION AND VENUE

13.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein.

14.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §§ 2201–2202, and 42 U.S.C. §1983.

15.     This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331. Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. See 29 U.S.C. § 701, et seq. and 20 U.S.C. § 1681, et seq.

16.     There exists an actual and justiciable controversy between Plaintiffs and Defendant requiring resolution by this Court.

17.     Plaintiffs have no adequate remedy at law.

18.     Venue is proper before the United States District Court for the Middle District of Pennsylvania, Scranton Division, under 28 U.S.C. §1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Middle District of Pennsylvania.

19.     The Court has personal jurisdiction over the School District, which is a public school district head quartered in Pike County, Pennsylvania.

## PARTIES

### The Plaintiffs

20.    JOHN DOE 1, in his own capacity and as parent of child DOE 1.

21.    JOHN DOE 2, in his own capacity and as parent of child DOE 2.

22.    JANE DOE 1, in her own capacity and as parent of child DOE 3.

23.    JANE DOE 2, in her own capacity and as parent of child DOE 4.

24.    JANE DOE 3, in her own capacity and as parent of child DOE 5.

25.    One or more of the children are disabled and medically fragile, with medical conditions which place them at high-risk for adverse reaction to COVID-19 infection including serious illness and/or death, as well as because of the number of unmasked students in the school buildings, which increases the risk of exposure to COVID-19, the one or more children with disabilities are limited in where they may go in the school building, are prevented from moving in the hallways and prevented from attending classes, including art, music, and gym.

26.    One or more of the children are under the age of twelve and are unable to be protected from COVID-19 via a vaccine.

27.    One or more of the children are over the age of twelve and do not want to be exposed to an increased risk of infection from COVID-19 because of the School Board's affirmative act of voting to permit purely voluntary parental opt-out from universal masking.

### The Defendants

28.    Defendant School District is a municipal organization made up of nine individual school directors residing and conducting business in Pike County, Pennsylvania.

29.    Defendant School Board is an elected school board residing and conducting business

in Pike County, Pennsylvania.

30.     Upon information and belief, Defendant, Jack Fisher, is Board President, a Pike County resident and member of the School Board, sued here in his individual and representative capacity.

31.     Upon information and belief, Defendant, Jessica Decker, is Board Vice-President, a Pike County resident and member of the School Board, sued here in her individual and representative capacity.

32.     Upon information and belief, Defendant, Dawn Bukaj, is a Pike County resident and member of the School Board, sued here in her individual and representative capacity.

33.     Upon information and belief, Defendant, Brian Carso, is a Pike County resident and member of the School Board, sued here in his individual and representative capacity.

34.     Upon information and belief, Defendant, Cory Homer, is a Pike County resident and member of the School Board, sued here in his individual and representative capacity.

35.     Upon information and belief, Defendant, Pam Lutfy, is a Pike County resident and member of the School Board, sued here in her individual and representative capacity.

36.     Upon information and belief, Defendant, Felicia Sheehan, is a Pike County resident and member of the School Board, sued here in her individual and representative capacity.

37.     Upon information and belief, Defendant, Rosemary Walsh, is a Pike County resident and member of the School Board, sued here in her individual and representative capacity.

38.     Defendant School District and School Board are "distinct legal entit[ies] with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities." Thus, they are a "public entity" within the meaning of the Americans with

Disabilities Act, 28 C.F.R. §35.104, and receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).

## FACTS

### I.    COVID-19 and its Delta Variant Spread Through the Breath of Others

39.    Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein

40.    COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

41.    Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[5]

42.    Asymptomatic carriers of COVID-19 can also transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. However, they are estimated to account for more than 50% of transmissions.[6]

43.    The current, most prevalent variant of COVID-19, known as the Delta variant, is extremely infectious and is spread much more readily than even the original SARS-CoV-2 strain.[7]

---

[5] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[6] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[7] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

44.     On August 31, 2021, due to the increase in the rate of infection from COVID-19, Delta Variant, and because many school districts were permitting parents the option to have their children not wear masks while in school, (a/k/a optional masking), the Acting Secretary of the Pennsylvania Department of Health Ordered universal masking to be required for all school students in Pennsylvania, effective September 7, 2021.[8]

45.     There is no cure for COVID-19. The vaccine is also only currently approved for individuals 12 years and older and can prove less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

46.     School-aged children with certain disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[9] And, as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[10]

47.     Upon information and belief, the schools located within Pike County regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population. Asthma alone impacts 7.99% of the School District's school

---

[8] See Exhibit 2, August 31, 2021, Order of the Acting Secretary of the Pennsylvania Department of Health.

[9] Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[10] Id.

age children.[11]

A.   **The necessity of masking for safe access to school.**

48.   Washing hands, cleaning surfaces, introducing new air filters are some examples of modifications that may reduce some risk of COVID transmission. But those are not enough for children with disabilities, and they are not even the most effective means.

49.   For school age children who are unable to be vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing. The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[12]

50.   Moreover, "when teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[13] The cloth layer blocks the droplets from releasing into the environment, along with the microorganisms these particles carry. To be more specific, masks block the large droplets ("20-30 microns and up") as well as finer droplets.[14]

51.   The Health and Safety Plan of the School District, which was submitted to the Pennsylvania Department of Health, on July 15, 2021, sets forth that it was developed with the input

---

[11] See Exhibit 4 Board motion of September 28, 2021.

[12] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06-esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8

[13] Id.

[14] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/maskingscience-sars-cov2.html (last visited Sept. 2, 2021).

from Wayne Memorial Hospital.[15]

52.    The Wayne Memorial Hospital has produced a video in collaboration with area schools which explains the importance of masking to prevent the spread of COVID-19 in schools. They recommend that students in schools wear masks since masks reduce the amount of particles and droplets in the air which cause the spread of COVID-19.The video features Doctors Sean McVeigh, pulmonologist/COVID Task Force and James Cruse, Family Medicine/WMCHC Medical Director.[16]

53.    Thus, the CDC,[17] the American Academy of Pediatrics,[18] and the Pennsylvania Department of Health[19] and Wayne Memorial Hospital, all have recommended universal masking in schools in an effort to reduce the risk of transmission of COVID-19.

54.    The Pennsylvania Department of Education also supports universal masking to reduce the risk of transmission of COVID-19.[20]

55.    Unmasked individuals are at risk of immediate and irreparable harm from COVID-19, as well as at a higher risk of spreading COVID-19, and the consequences of serious illness and/or death. The Acting Secretary of the Pennsylvania Department of Health entered the Order because:

---

[15] See Exhibit 5, Health and Safety Plan dated July 15, 2021.

[16] https://www.wmh.org/covid-19-novel-coronavirus/

[17] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[18] https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/

[19] See Exhibit, 2, August 31, 2021 PADOH Order.

[20] See Exhibit 3, September 10, 2021 Directive of the PDE.

In accordance with the recommendations of the CDC and the AAP [(American Academy of Pediatrics)] and based upon the rising case numbers and hospitalizations in general in the Commonwealth, including the number of cases in our children, as well as the need to protect and maintain in-person education for the health and well-being of those children, I am issuing this Order to protect the ability of our schools to continue to educate our children, and of our children to receive in-person instruction in the safest environment possible.[21]

56.     Accordingly, the entirely reasonable modification being sought in this case is *community masking: protection of selves and others*. Such a universal masking mandate has been successfully implemented in public school districts across Pennsylvania.

**B.     A Purely Voluntary Opt-out of Masking Pits Children Against Each Other and Creates Serious Risk of Injury and Death**

57.     As schools have reopened, COVID-19 infection numbers among school aged children have continued to rise.[22]

58.     The School Board, on September 28, 2021, voted to by a 5-1 majority to permit parents the option to sign a waiver form to except their children from the PADOH Order WITHOUT supporting medical documentation, despite having full knowledge of the CDC Order, the PADOH Order, the PDE Directive, requiring medical documentation if a parent wanted their child not to wear a mask.

59.     This purely voluntary opt-out pits child-against-child, endangering the lives of children with disabilities. Parents of school children with disabilities are forced to hope other parents will require masking, and not opt-out. But when they do opt-out of masking, the children with disabilities are subjected to serious reactions or even death as a result of COVID-19 being spread

---

[21] See Exhibit 2, p. 2, August 31, 2021 Order of the PADOH.

[22] See Exhibit 2, p. 2, August 31, 2021 Order of the PADOH.

through unmasked breathing, coughing, and sneezing.

60.     Upon information and belief 640 parents in the School District have opted-out their children without medical documentation, thereby, nullifying masking, spreading COVID, and creating unnecessary risk of severe illness or even death for children with disabilities.

61.     COVID-19 is rapidly spreading through Pike County and the schools. Dr. Cruse, who is the Chief Medical Officer for Wayne Memorial Community Health Centers (WMCHC), has "responsibility for our population and community health initiatives ... [and is] the lead physician on our outpatient response to COVID-19, [as well as] interacting with the Pennsylvania Department of Health, keeping up with guidance on COVID-19."[23]

62.     Dr. Cruse also consults with and advises five separate school districts, including Delaware Valley on COVID-19 protocol. Only one - Delaware Valley has a mask-optional policy in contradiction to the PADOH Order and against Dr. Cruse's strong recommendations:

> To my knowledge Delaware Valley School District is the only school district out of the 5 local districts I advise that has this policy allowing parents of students to opt-out of the mask requirement for any reason.  Specifically, I know from regular contact with their superintendents that Wallenpaupack, Wayne Highlands, and Western Wayne School Districts require medical certification from a physician, nurse practitioner, or physician's assistant that provides regular care to the student to obtain a medical exemption from their mask mandate.[24]

63.     According to Dr. Cruse, who has been monitoring COVID-19 in Wayne and Pike Counties, last week saw a record surge in the number of cases of COVID-19 infection to the highest it has been since January 17, 2021:

---

[23] See Exhibit 6, Affidavit of Dr. James Cruse, Chief Medical Officer of Wayne Memorial Community Health Centers.

[24] See Exhibit 6, ¶ 21, Dr. Cruse's Affidavit.

The first week in October, Pike and Wayne counties had a rate of 312 new cases per 100,000 residents per week. That is the highest number of new COVID infections in Pike and Wayne Counties since January 17, 2021 and one of the highest weekly case counts of the entire pandemic.[25]

64.    Dr. Cruse also explains that there have been 224 school age children diagnosed with COVID-19 in the first two months of school this year in Pike County:

15. There has been a higher rate of cases of COVID-19 diagnosed in school-aged children in Pike County so far during this school year than last school year. According to the PA Department of Health data, between the dates of 08/16/2021 and 10/16/2021 there have been 224 cases of COVID-19 diagnosed in children ages 5-18 years old in Pike County.[26]

65.    As of October 5, 2021, the number of COVID-19 infected students has continued to grow in the Delaware Valley School District. "Since the 2021-22 school year began in late August, DVSD has reported 80 cases of COVID-19, with more than 337 associated quarantines, compared with 388 for the 2020-21 school term. With a school district population of 4,300, the more than 400 individuals affected so far this year reflect nearly 10% of the DVSD education community. As there is currently no online school option offered, quarantined students have no access to school instruction."[27]

66.    Upon information and belief, the 80 confirmed COVID-19 infected cases so far this school year is compared to only 7 last year in September when all of the students were wearing masks.

67.    In the School District, the Plaintiffs and those similarly situated attend classes in close

---

[25] See Exhibit 6, ¶8, Affidavit of Dr. Cruse.

[26] Id. at ¶15.

[27] See Exhibit 7, River Reporter, Article of October 5, 2021 at 8:55 am "DV board, administration spar over masks."

proximity to unmasked students, faculty, and staff.

68.     The Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

69.     The Plaintiffs and those similarly situated are entitled to safe, fundamental and non-discriminatory access to their school buildings with masked teachers, custodians, parent volunteers, and students.

70.     The necessity for such masking is greater now than ever. Yet, the policy of the School District allowing parents to opt-out of a universal mask mandate policy subjects children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

C.      **The School District and the Board of Directors Duties and Responsibilities to Provide a Safe and Healthy Environment for the School Children.**

71.     Defendant School Board is charged by the State with the management and supervision of the public elementary and secondary schools in the District. It derives its authority to govern the local schools directly from the Constitution of the State of Pennsylvania and the rules and regulations of the Pennsylvania Department of Education. School Board Governance and Operations Legal Status - Board of School Directors, Code 2001, 24 P.S. 301 et seq.

72.     The District is governed by a Board of School Directors consisting of nine (9) directors, each of whom is elected on a regional basis for a term of four years. See Board of School Directors, Code 2001, 24 P.S. 301 et seq.

73.     "A school shall make specific and adequate provision for protecting the health and safety of students and for safeguarding their physical welfare." 22 Pa. Code, § 51.22 General Safety.

74.     A school district is responsible "to comply with the requirements of Section 504 and its implementing regulations at 34 CFR Part 104 (relating to nondiscrimination on the basis of handicap in programs and activities receiving or benefiting from federal financial assistance) and implements the statutory and regulatory requirements of Section 504." 22 Pa. Code, § 15.1 (a) Purpose.

75.     "Section 504 and its accompanying regulations protect otherwise qualified handicapped students who have physical, mental or health impairments from discrimination because of those impairments." 22 Pa. Code, § 15.1 (b) Purpose.

76.     "The law and its regulations require public educational agencies to ensure that these students have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question." 22 Pa. Code, § 15.1 (b) Purpose.

77.     "School districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students as adequately as the needs of nonhandicapped students are met. These aids, services and accommodations may include, but are not limited to, special transportation, modified equipment, adjustments in the student's roster or the administration of needed medication. For purposes of the chapter, students protected by Section 504 are defined and identified as protected handicapped students." 22 Pa. Code, § 15.1 (b) Purpose.

78.     "A school district shall provide each protected handicapped student enrolled in the district, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the

school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities." 22 Pa. Code, § 15.3. General.

**D.    Defendants' Actions Constitute a Real and Immediate Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.**

79.    Defendants currently refuse to provide reasonable accommodations to students with disabilities by refusing to implement a Health and Safety Plan designed in accordance with current federal, and state guidance.

80.    Defendants' Health and Safety Plan was last updated on July 15, 2021, before the PADOH's August 31, 2021 Order.[28]

81.    Defendants' Health and Safety Plan sets forth that "mask wearing will be optional while inside the school building and/or school grounds."[29]

82.    Defendants' Health and Safety Plan is violation of both the CDC and PADOH requirements for universal masking.

83.    Defendants' refusal to provide reasonable accommodations in the form of an appropriate health and safety plan puts Plaintiffs (namely, children with disabilities) at risk of death and debilitating illness from COVID-19. Defendants' refusal to provide reasonable accommodations for students with disabilities thereby excludes Plaintiffs from their education.

84.    Plaintiffs include students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious complications or death from a COVID-19 infection.

---

[28] See Exhibit 5, the July 16, 2021 School District Health and Safety Plan.

[29] Id. at page 5.

85.     Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the

Rehabilitation Act ("Section 504" or "Rehabilitation Act") provide broad protections for individuals

with disabilities. Both federal disability-rights laws prohibit outright exclusion, denial of equal

access, or unnecessary segregation for students with disabilities in public education. Both laws also

prohibit methods of administration that defeat the fundamental goals of public schools, that is, to

provide an education. Finally, both federal disability rights laws impose affirmative obligations on

covered entities to proactively provide reasonable modifications or reasonable accommodations to

ensure that individuals with disabilities have an equal opportunity to benefit from their public

education.

86.     School districts with students who have disabilities, including underlying medical

conditions, that make them more likely to contract and/or become severely ill from a COVID-19

infection have a legal obligation to ensure that those children can attend school with the knowledge

that the school district has followed recommended protocols to ensure their safety. Currently, the

CDC's, and the PADOH's required protocol—as well as those recommended by Wayne Memorial

Hospital, the American Academy of Pediatrics and the American Medical Association—include

universal masking.

**E.     The Board's Vote on September 28, 2021, Which Increased the Risk of Exposure to Covid-19 Through Optional Masking, Violates the Due Process Rights of Plaintiffs.**

87.     No harm will come to Defendant in implementing a health and safety plan which

conforms to the federal and state requirements for universal masking and requiring parents to submit

medical documentation if they want their child to be exempted from wearing a mask. Defendant

successfully implemented a health and safety plan during the 2020/2021 academic school year which

included universal masking and required parents to submit medical documentation if they wanted their child to be exempted from wearing a mask.

88.    Defendants' refusal to allow disabled or concerned children to safely access their education is in direct conflict with the express requirements of the ADA, which Congress created to serve the strong public interest in seeing persons with disabilities treated equally and fairly by society.

89.    The School Board's Policy Manual sets forth: "In order to safeguard the school community from the spread of certain communicable diseases, the Board requires that guidance and orders from state and local health officials, established Board policy and administrative regulations, and Board-approved health and safety plans be followed by students, parents/guardians and district staff." See Delaware Valley School Board Policy Manual, Section 200 Pupils, Immunizations and Communicable Diseases, Code 203.

90.    Upon information and belief, Board procedures and policies shall be consistent with the law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed toward the maintenance and support of a thorough and efficient system of public education within the school district.

91.    Upon information and belief the Board is responsible for acquiring reliable information from responsible sources which will enable it to make the best possible decisions about the scope and nature of the educational program, and the health and well-being of the students, the faculty and the community.

92.    One of those responsible sources for the School Board regaring COVID-19

information and masking requirements is Wayne Memorial Hospital and Dr. James Cruse[30], who,

along with "all of the medical leadership at Wayne Memorial have advised those school districts that

with this level of community transmission of COVID-19 that we **strongly recommend universal**

**masking in schools.**"[31]

> **F.** **On January 29, 2021, the CDC entered an order requiring universal masking for students while riding school buses.**

93.     On January 29, 2021, the CDC entered an Order to prevent spread of the virus that

causes COVID-19. This Order was effective as of 11:59 p.m. February 1, 2021 and was published

in the Federal Register on February 3, 2021. See Centers for Disease Control and Prevention

Department of Health and Human Services Order under Section 361 of the Public Health Service

Act (42 U.s.c. 264) and 42 Code of Federal Regulations 70.2, 71.31(b), 71.32(b) Requirement for

Persons to Wear Masks While on Conveyances and at Transportation Hubs.[32]

94.     The STATEMENT OF INTENT for the CDC Order of January 29, 2021, sets forth:

This Order shall be interpreted and implemented in a manner as to achieve the following objectives:

Preservation of human life;
Maintaining a safe and secure operating transportation system;
Mitigating the further introduction, transmission, and spread of COVID-19 into the United States and from one state or territory into any other state or territory; and
Supporting response efforts to COVID-19 at the Federal, state, local, territorial, and tribal levels.[33]

95.     The CDC Order of January 29, 2021 is enforced by regulations, but the CDC is

---

[30] See Exhibit 6, Affidavit of Dr. James Cruse.

[31] See Id. ¶ 7 (emphasis added).

[32] See Exhibit 1.

[33] See Exhibit 1.

looking to avoid any criminal prosecution and instead is hoping for widespread cooperation and

"implementing additional civil measures enforcing the provisions of this Order", as follows:

> To address the COVID-19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities including the provisions of 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR part 1503, 1540.105, 1542.303, 1544.305 and 1546.105.

> This Order shall be further enforced by other federal authorities and may be enforced by cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18 and 71.2.[33]

> While this Order may be enforced and CDC reserves the right to enforce through criminal penalties, CDC does not intend to rely primarily on these criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance as well as support from other federal agencies in implementing additional civil measures enforcing the provisions of this Order, to the extent permitted by law and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID-19 Safety in Domestic and International Travel).[34]

96.     Wearing masks on public transportation, including school busses is mandatory and

subject to the January 29, 2021 Order of the CDC. See https://www.cdc.gov/coronavirus/

2019-ncov/travelers/face-masks-public-transportation.html, explaining in the FAQ's:

> Are masks required on school buses?

> Yes, passengers 2 years of age and older and drivers must wear a mask on buses or vans operated by public or private school systems including early care and education/child care programs, subject to the exclusions and exemptions in CDC's Order. Operators of school buses should refer to the Department of Education's COVID-19 Handbook pdf icon[PDF – 27 pages]external icon for additional guidance.

> See also https://www2.ed.gov/documents/coronavirus/reopening.pdf, explaining:

> Transportation Considerations
> CDC issued an order requiring wearing masks on all public conveyances, including

---

[34] See Exhibit 1.

on school buses. Accordingly, regardless of the mask policy at school, passengers and drivers must wear a mask on school buses, including on buses operated by public and private school systems, regardless of vaccination status, subject to the exclusions and exemptions in CDC's order.  [Emphasis added]

97.     The School District has chosen to defy and to act in direct violation of the Federal requirements under the January 29, 2021 Order of the CDC requiring students to wear masks while traveling on school buses, by failing to meaningfully enforce universal masking.

98.     Upon information and belief, the combination of the District's failure to follow proper exemption procedures and the failure to meaningfully enforce universal masking on school buses has resulted in numerous students on buses either not wearing masks, or improperly wearing masks.

**G.     The Board Members Offered No Valid Basis for Failing to Comply**

99.     The July 15, 2021 Health and Safety Plan, which predates the new guidance from the PADOH issued on August 31, 2021, remained in effect for the first day of school in violation of the PADOH Order.

100.     During the September 28, 2021 meeting, the Board Members in favor of permitting optional masking with parental approval without medical documentation, offered no medically justifiable reasoning for failing to continue to follow the guidelines of Federal, State, and local officials.

101.     The excuses and explanations offered ranged from the completely inane, to narcissistic and insulting, to complete conspiracy and further to complete the abrogation of the duty assigned members of the Board to protect the safety and well-being of the students.

102.     Commentary from various members of the Board indicated no reason for a lack of compliance with expert guidelines beyond the arbitrary and capricious.

**H.     The Board Members Offered No Basis for Defying the Universal Masking Requirement Ordered by the PADOH and the CDC.**

103.    The Board Members who voted to not enforce the PADOH's Order and the CDC's Order requiring universal masking did not state that they spoke with any health professionals inside or outside of the School District prior to concluding that universal masking should be at the parents' option without medical documentation.

104.    The Board Members who voted to not enforce the PADOH's and the CDC's universal masking Orders provided no information from any local, Commonwealth, or national health agency to support their votes.

105.    The Board members who voted to not enforce the PADOH's Order and the CDC's universal masking Orders did not state that the District Physician supported their vote.

106.    The Board members who voted to not enforce the PADOH's Order and the CDC's universal masking Orders did not present any scientific or medical evidence that the masking requirement for students riding school buses would harm any student or staff member.

107.    The District's "Student Face Covering - Temporary Exemption Form"violates the ADA and Section 504 since the form acknowledges that not wearing a face covering causes their child to "be at an increased risk of exposure of COVID-19 and contact tracing." [35]

108.    The District's parent optional masking policy violates the ADA and Section 504 to the other students by failing to make an appropriate accommodation to the other students who are wearing masks.

---

[35] See Exhibit 8, Student Face Covering - Temporary Exemption Form. The school district also had  an exemption form which required medical documentation that had to be provided no later than September 30, 2021. See Exhibit 9.

109.     The accommodation made by the School District for students exempted from wearing a mask by the District, is unreasonable since it admittedly creates a higher risk of COVID-19 exposure to the student not wearing a mask and to all the other students on a bus or in a classroom with that student.[36] Moreover, there can be more than one student on a bus or in a classroom not wearing a mask at the same time, further increasing the risk of exposure to infection from COVID-19.

110.     Dr. Cruse opines that there is a heightened risk of exposure without masks:

COVID-19 can spread quickly. In-person gatherings pose a heightened risk of case transmission of COVID-19 as the spread of COVID-19 is more likely when people are in close contact or proximity with one another (within about six feet). The risk of transmission also increases when individuals gather in close proximity for extended periods, and when they do so in enclosed (indoor) spaces.[37]

111.     An accommodation is unreasonable if it creates "'a direct threat to the health or safety of other individuals in the workplace." See 42 U.S.C. § 12113(b); *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288 (1987)); see 29 CFR § 1630.2(r) (1998) (assessment of direct threat "shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence").

112.     In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of

---

[36] See Exhibit 8.

[37] See Exhibit 6, ¶ 10.

auxiliary aids or services will mitigate the risk. 28 C.F.R. § 35.139(b); *see also Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 94 L.Ed.2d 307 (U.S. 1987).

113.    The District's parental opt-out policy fails to meet the standards of the ADA and Section 504 for providing protection for the student who is excepted from wearing a mask as well as fails to provide protection for other disabled students, children under the age of 12 who cannot be vaccinated, and all other students who ride school buses and/or attend school.

114.    The District's parental opt-out policy fails to meet the standards of the ADA and Section 504 since it increases the risk of harm for the student who is excepted from wearing a mask, as well as increases the risk of infection to other disabled students, children under the age of 12 who cannot be vaccinated, and all other students who ride school buses and/or attend school.

## I.    The District's Decision to Violate the Masking Requirements of the PADOH and the CDC Causes Immense and Irreparable Harm to Students, Staff, and the Community, Who Are at Increased Risk of Developing COVID-19 and to Students Who Are At Risk of Losing Critical In-Person Instruction Time.

115.    The Delta variant of COVID-19 can be transmitted very well even by vaccinated individuals.

116.    Dr. James Cruse opines that "It is imminently important to have the school community wear masks or face coverings without purely personal opt-out options."[38]

117.    The Wayne Memorial Hospital has asked all Districts in Wayne and Pike Counties to require masks consistent with the CDC and PADOH guidelines.[39]

118.    The Delta variant of COVID-19 can be transmitted very well even by vaccinated

---

[38] See Exhibit 6, ¶ 13, Dr. Cruse's Affidavit.

[39] See Exhibit 6, Dr. Cruse's Affidavit.

individuals.[40]

119.   Thus, 100% of the School Districts students, staff, and visitors are capable of transmitting Covid-19 to one another or to somebody else in the community.[41]

120.   Under the current policy of optional masking effectuated by the Board's September 28, 2021 vote, students, staff and the community are likely to have vastly increased risk of exposure.[42]

121.   There are no health risks to wearing masks, and there is no evidence that masks affect a child's ability to focus or learn in school.[43]

122.   In Dr. Cruse's medical opinion, immediate and irreparable injury, loss, or damages will result if universal masking is not required for all of the School District's students and employees.[44]

123.   Dr. Cruse opines that without universal masking, children, teachers, and/or staff could suffer serious illness or death.

> There have been clusters of outbreaks in our local schools where the epidemiological evidence shows that the infections were transmitted in the classroom (due to the fact that students sitting near each other in the classroom tested positive within a few days of each other).  There have been cases indicating that those students then brought the infection home to their family members who subsequently became seriously ill.[45]

---

[40] See Exhibit 6, Dr. Cruse's Affidavit.

[41] Id.

[42] Id.

[43] Id.

[44] Id.

[45] Id. at ¶ 16.

124.   Simply stated, Dr. Cruse opines that "Enforced masking works."[46]

125.   Upon information and belief, as of the date of filing this Complaint, in this 2021/2022 school year, without the requirement of providing medical documentation, approximately 640 parents have applied for and received from the School District an exception. Every single exception application was approved by the School District.

126.   There are approximately 4,400 students in the School District. Therefore, just about 15% of the school district requested and were approved for exceptions, This means that the School District is forcing a health risk onto the vast majority the students in the School District (85%) whose parents accept and comply with universal masking.

127.   Since the Schools opened this fall, prior to filing this Complaint, upwards of 337 students have lost in person instruction, which is the exact problem universal masking is supposed to prevent. As there is currently no online school option offered, quarantined students have no access to school instruction."[47]

128.   According to Dr. Cruse, no harm will come to Defendant in implementing a health and safety plan that requires universal masking in conformance with CDC and PADOH requirements:

> There also exists no peer-reviewed scientific literature to support the false claims by some persons that wearing a mask weakens a person's immune system, increases the risk of infection with another pathogen (germ), nor has any other detrimental impact on the physiology of healthy children. Likewise, there is no data to suggest that wearing a mask has any negative or harmful consequences to a child's academic

---

[46] See Exhibit 6, at ¶ 18, Dr. Cruse's Affidavit.

[47] See Exhibit 7, River Reporter, Article of October 5, 2021 at 8:55 am "DV board, administration spar over masks."

growth or emotional or behavioral development.[48]

129.    Dr. Cruse has explained that granting an exception to universal masking should be very rare. Indeed, having asthma "is generally not a reason for a mask exemption":

> My instruction to our health system's providers is that there are very few reasons that a student cannot wear a mask and medical exemption from the mandate should be rare and unusual. It would include things like severe developmental disability and diagnosed panic disorder with agoraphobia, to the extent that the patient is under a psychiatrist's care.  Since asthmatics are higher risk of severe outcomes from COVID-19 and masks reduce exposure to other infections that cause asthma exacerbation, asthma is generally not a reason for a mask exemption.[49]

130.    Defendant's refusal to allow disabled or concerned children to safely access their education is in direct conflict with the express requirements of the ADA, which Congress created to serve the strong public interest in seeing persons with disabilities treated equally and fairly by society.

## CAUSES OF ACTION

### COUNT I

### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA

131.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

132.    "In the ADA, Congress provided [a] broad mandate" to "effectuate its sweeping purpose[ to] ... forbid[] discrimination against disabled individuals in major areas of public life, [including] ... public services ... ." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). It is "a milestone on the path to a more decent, tolerant, progressive society." *Id.* (quoting *Bd. of Trustees*

---

[48] See Exhibit 6, ¶ 27, Dr. Cruse's Affidavit.

[49] Id. ¶ 22.

*of Univ. of Ala. v. Garrett*, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring)).

133.   Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

134.   The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

135.   The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

136.   The School Board's vote is denying local school districts the ability to provide these similarly children in the instant matter with the protections they need to attend school safely. Further, in permitting parents the option to opt-out their children without medical documentation, the Board of Education have placed the lives of medically vulnerable children who have disabilities under the ADA in danger. In doing so, Defendants have violated the regulations and provisions of the ADA:

   a.   Defendants are failing to make a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

   b.   Defendants are excluding Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

   c.   Defendants are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

-29-

d.      Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

137.    The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

138.    Defendants, in their official capacity as Board Members and the School District do not have the authority to circumvent the ADA and its protections for students with disabilities through executive order or guidance requirements.

139.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from the public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

## COUNT II

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

140.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

141.    Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability

under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

142.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the Commonwealth of Pennsylvania.

143.    Defendants, in their official capacities, are the recipients of federal financial assistance.

144.    The School Board's vote is denying public health authorities the ability to provide these similarly situated children with the accommodations they need to attend school safely.

145.    Defendants are refusing to provide a universal masking policy as the accommodation medically vulnerable children with disabilities need to attend school safely.

146.    Defendants have violated the regulations and provisions of Section 504, and are violating the regulations and provisions of Section 504, as follows:

   a.    Defendants are excluding Plaintiffs from participation in public education in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

   b.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability in violation of 34 C.F.R. § 104.4(b)(4);

   c.    Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by the school district, in violation of 34 C.F.R. § 104.4(b)(4).

147.    Defendants do not have the authority to circumvent Section 504 and its protections

for students with disabilities through school board votes or guidance requirements.

148.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## COUNT III

### 42 U.S.C. §1983 - VIOLATION OF SUBSTANTIVE DUE PROCESS (5TH AND 14TH AMENDMENTS)

149.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

150.    In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

151.    In the instant case, Defendants unquestionably acted under the color of state law.

152.    Each Individual Defendant is an elected, voting member of the School District School Board.

153.    Under the Fifth Amendment to the Constitution, no person may be deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V.

154.    The Fourteenth applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV.

155.    Plaintiffs have constitutionally protected interests in the benefits that come from the universal mask policy that was rescinded by the School Board vote, including the ability to pursue a safe and healthy education.

156.    Defendants' vote in contradiction of the requirement to follow CDC, PADOH and PDE and other entity guidelines on universal masking unlawfully deprives Plaintiffs of these and other constitutionally-protected interests without due process of law. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the Board's own policies and other applicable laws. Such deprivation violates the Fifth and Fourteenth Amendments of the Unites States Constitution.

157.    Plaintiffs were harmed and continue to be harmed by these unlawful acts, including by suffering irreparable harm including exposure to present and existential threats to health and safety, threat of retribution and bullying, increased risk of serious bodily injury and/or death.

## COUNT IV

## 42 U.S.C. §1983 - VIOLATION OF SUBSTANTIVE DUE PROCESS (FOURTEENTH AMENDMENT)

158.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

159.    In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right.  42 U.S.C. §1983.

160.    In the instant case, Defendants unquestionably acted under the color of state law.

161.    Each Individual Defendant is an elected, voting member of the School District School Board.

162.    Under the Fourteenth Amendment to the Constitution, and as established by state law including the state-created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

163.    Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts of Defendants, including by suffering irreparable harm including exposure to present and existential threats to health and safety, threat of retribution and bullying, increased risk of serious bodily injury and/or death.

## COUNT V

## 42 U.S.C. §1983 – RIGHT TO FREE ASSOCIATION
## (FIRST AMENDMENT)

164.    Plaintiffs incorporate the above averments as if set forth in full herein.

165.    In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right.  42 U.S.C. §1983.

166.    Defendants deprived Plaintiffs of the right of free association guaranteed by the First Amendment of the United States Constitution. Plaintiffs can no longer associate safely, or potentially at all, because of Defendant's unilateral revocation of the existing policy of following governmental and other entity guidance, yet they are required under compulsory education laws to attend school.

167.    Defendant's actions have placed Plaintiffs in the unenviable position of having to choose between ensuring their safety in an ongoing pandemic and receiving the federally protected property right of an education guaranteed to all children K-12 by the Pennsylvania Constitution.

168.    Deprivation of this federally protected right violates the United States Constitution's First Amendment.

169.    Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering irreparable harm including exposure to present and existential threats to health

and safety, threat of retribution and bullying, increased risk of serious bodily injury and/or death.

## COUNT VI

## VIOLATION OF FUNDAMENTAL RIGHTS PROTECTED UNDER THE
## PENNSYLVANIA CONSTITUTION

170.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

171.     Article III, Section14, of the Pennsylvania Constitution provides that: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." PA CONST Art. 3, § 14.

172.     Under the Pennsylvania Constitution, education is a fundamental right of every student and Defendants have a duty to ensure that every student in Defendant School District is treated equally and has the same fundamental opportunity for a "thorough and efficient" education.

173.     It is believed and therefore averred that the acts and omissions of the Defendants, as described above, are depriving Plaintiff children of the opportunity for a through and efficient education guaranteed to them and are thus in violation of Article III, Section 14 of the Pennsylvania Constitution.

174.     Plaintiffs seek equitable and injunctive relief only under this Count.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

175.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

176.     Plaintiffs seek a temporary restraining order enjoining the School Board from permitting parents to exempt their children from universal masking without provision of medical documentation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

a.    Assume jurisdiction of this action;

b.    Vacate and set aside the Defendant's rescission of the CDC and PADOH adherent policy, as well as any other action taken by Defendants to rescind the universal masking policy;

c.    Declare that the Defendant's Health and Safety Plan dated July 16, 2021 is void and without legal force or effect;

d.    Declare that the failure to abide by CDC or PADOH and PDE actions taken by Defendant in violation of the ADA and Section 504 are contrary to the laws of the United States;

e.    Declare that the failure to abide by CDC or PADOH and PDE actions taken by Defendant to void the universal masking policies are in violation of the United States and Pennsylvania Constitutions and contrary to the laws of the United States and Pennsylvania;

f.    Declare that the rescission of the policy of following CDC and other government entity guidelines, including the PADOH and PDE are invalid actions taken by Defendant to ignore a mask policy are arbitrary, capricious, based on ignorance due to failure to inquire into facts, otherwise not in accordance with law, and without observance of required procedures;

g.    Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing a policy that violates the ADA or Section 504 and from taking any other action to enforce such policy that is not in compliance with applicable law;

h.    Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing a policy contrary to the guidance of the CDC and PADOH for COVID-19 relief, including not only Orders, but also recommendations for universal masking made by the CDC, the PADOH and/or Wayne Memorial Hospital so long as the County is in the substantial or high risk categories for COVID-19 infection and from taking any other action to rescind such policy that is not in compliance with applicable law; and

i.    Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

j.   Grant such other and further relief as may be just, equitable, and proper including without limitation, an award of attorneys' fees and costs to Plaintiff.

Date: October 18, 2021

Respectfully submitted,
Behrend Law Group, LLC

/s/ *Kenneth R. Behrend*

Kenneth R. Behrend
PA ID No. 37961
The Pittsburgher, Suite 1700
428 Forbes Avenue
Pittsburgh, PA 15219
Krbehrend@behrendlawgroup.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served by e-mail on this 18th day of October 2021, addressed to the below parties and counsel:

| | |
|---|---|
| Board President, | Jack Fisher, jfisher@dvsd.org |
| Board Vice-President, | Jessica Decker, jdecker@dvsd.org |
| Board Member, | Dawn Bukaj, dbukaj@dvsd.org |
| Board Member, | Brian Carso bcarso@dvsd.org |
| Board Member, | Cory Homer chomer@dvsd.org |
| Board Member, | Pam Lutfy plutfy@dvsd.org |
| Board Member, | Felicia Sheehan fsheehan@dvsd.org |
| Board Member, | Rosemary Walsh rwalsh@dvsd.org |
| Secretary, | William Hessling, whessling@dvsd.org |
| Solicitor, | Ashley Zimmerman, zimmerman@tristatetrial.com |

Respectfully submitted,

Dated October 18, 2021                    By: /s/ *Kenneth R. Behrend*

Kenneth R. Behrend
Counsel for Plaintiffs
Pa. I.D. No. 37961
BEHREND LAW GROUP LLC
The Pittsburgher, Suite 1700
428 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-4460 (Telephone)
(412) 391-5073 (Facsimile)
krbehrend@behrendlawgroup.com